**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **TYREESE LEARMOND,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., and FIDELITY BROKERAGE SERVICES, LLC.,**<br><br>**Defendants.** | **4:26CV3138**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on the Amended Motion to Remand (Filing No. 16) filed by Plaintiff, pro se, and the Motion to Compel Arbitration (Filing No. 7) filed by Defendant, Fidelity Brokerage Services, LLC ("Fidelity"). Plaintiff moves to remand this action to state court, arguing that his federal claims are not sufficiently substantial to support federal jurisdiction. Fidelity moves to compel arbitration, arguing that the parties entered into a valid and enforceable arbitration agreement requiring Plaintiff's claims to be resolved through arbitration. For the reasons set forth herein, the undersigned magistrate judge will recommend that Plaintiff's motion to remand be denied, and that Fidelity's motion to compel arbitration be granted.[1]

## BACKGROUND

Plaintiff initially filed a Complaint against Fidelity and Experian Information Solutions, Inc. ("Experian") in the District Court of Lancaster County, Nebraska, on March 26, 2026. (Filing No. 1-1 at p. 8). Plaintiff alleges he had a paid membership subscription with Experian, and authorized Experian to make periodic withdrawals from his debit card account to pay for that subscription. Plaintiff alleges that on February 1, 2025, he properly canceled his membership with

[1] There is a split of authority regarding whether a magistrate judge's decision on a motion to remand is dispositive or nondispositive, but generally in this district such motions are treated as dispositive. *Misle Properties, LLC v. LBUBS 2004-C2 Cranberry Retail GP, LLC*, No. 4:18-CV-3121, 2018 WL 6831161, at *1 n.2 (D. Neb. Dec. 27, 2018) (collecting cases). There is also a split of authority as to whether motions to arbitrate are nondispositive and can be ruled on by a magistrate judge. See *All. Grp., Inc. v. Zurich Am. Ins. Co.*, No. 8:21CV188, 2021 WL 5325883, at *1 (D. Neb. Nov. 16, 2021) (recognizing split). Although this district generally treats such motions as nondispositive, in an abundance of caution the undersigned magistrate judge will issue a findings and recommendation on both motions. See *BBCM, Inc. v. Health Systems International, LLC*, 2010 WL 4607917, at *1 n. 1 (N.D. Iowa 2010) (issuing a report and recommendation on motion to compel arbitration "out of an abundance of caution" after recognizing split of authority).

Experian, but Experian completed two additional unauthorized electronic fund transfers from Plaintiff's debit card account on March 22, 2025, and September 11, 2025, totaling $49.98. (Filing No. 1-1 at pp. 9-10). Plaintiff alleges he notified his financial institution, Fidelity, of Experian's unauthorized transfers but Fidelity failed to investigate, take corrective action, or return Plaintiff's funds. *Id.*

Plaintiff's Complaint alleges several state law causes of action against Experian, including trespass to chattel, conversion, breach of contract, negligence, and negligent infliction of emotional distress. (Filing No. 1-1 at pp. 10-12). Plaintiff also asserts claims against both Experian and Fidelity for violation of the Electronic Transfer Funds Act ("EFTA"), 15 U.S.C. §1693 et seq., for initiating the unauthorized transfers and by failing to recredit Plaintiff's account or conducting a good faith investigation. (Filing No. 1-1 at pp. 12-13).

On April 30, 2026, Experian[2] removed the case to this Court under 28 U.S.C. § 1331 because Plaintiff asserted claims for violation of a federal statute, the EFTA. (Filing No. 1 at p. 2). Fidelity, "[w]ithout waiving any of its defenses or any other rights, including, but not limited to its right to seek and compel Plaintiff to file his claims in arbitration" consented to the removal. (Filing No. 1-3). Shortly thereafter, on May 4, 2026, Fidelity filed a motion to compel arbitration, asserting Plaintiff's account is governed by a customer agreement containing an arbitration provision. (Filing No. 7). Plaintiff has in turn filed a motion to remand this case back to state court, (Filing No. 16), and has also filed a brief opposing Fidelity's motion to compel arbitration, (Filing No. 27).

## ANALYSIS

### I. Motion To Remand

Plaintiff has moved to remand the case to state court, arguing that the federal cause of action alleged in his Complaint—violation of the EFTA—is only minor in comparison to the various state law causes of action, such that the federal claims are not sufficiently "substantial" to merit federal jurisdiction. (Filing No. 17 at pp. 3-12).

[2] On June 3, 2026, Experian filed a Notice of Settlement (Filing No. 38) advising the Court that it had reached a settlement with Plaintiff. Plaintiff and Experian have now filed a Joint Stipulation of Dismissal as to Experian. (Filing No. 41).

Defendants sued in state court have a "right to remove the suit to federal district court if the civil action is one 'of which the district courts . . . have original jurisdiction.'" *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1053 (8th Cir. 2020) (quoting 28 U.S.C. § 1441(a)). "A defendant's removal of a case to federal court is appropriate 'only if the action originally could have been filed there.'" *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444 (8th Cir. 2010) (quoting *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010)). A federal court's jurisdiction is measured "at the time of removal." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (citations omitted). Where, as here, removal is based on federal question jurisdiction, the claim must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Whether the action presents a federal question generally is governed by the 'well-pleaded complaint rule,' under which federal jurisdiction 'exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Once a plaintiff alleges a federal claim over which the federal court has original jurisdiction, the court gains power over all other claims that are "so related" to the federal claim that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Claims are part of the same case or controversy if they arise from a "common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Myers v. Richland Cty.*, 429 F.3d 740, 746 (8th Cir. 2005) (quotation omitted); *United Mine Workers*, 383 U.S. at 725. "Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions." *ABF Freight Sys. v. Int'l Bhd. Of Teamsters*, 645 F.3d 654 (8th Cir. 2011); *see also McLaurin v. Prater*, 30 F.3d 982, 984 (8th Cir. 1994) ("The statute's use of the word 'shall' . . . is a mandatory command.").

Here, the face of Plaintiff's Complaint states claims against both defendants under the EFTA. These claims "aris[e] under the Constitution, laws, or treaties of the United States," and thus provided a basis for removal of the entire case. *See* 28 U.S.C. § 1441(c); *Hunter v. Page Cnty., Iowa*, 102 F.4th 853, 869 (8th Cir. 2024) ("If even one claim in the complaint involves a substantial federal question, the entire matter may be removed.") (quoting *Pet Quarters, Inc. v. Depository Tr. & Cleaning Corp.*, 559 F.3d 772, 779 (8th Cir. 2009)). Because this Court has

original jurisdiction over Plaintiff's EFTA claims, supplemental jurisdiction is proper over his state law claims because they form part of the "same case or controversy." Plaintiff's state law claims are premised upon the same basic factual allegations as his federal claims. All of Plaintiff's claims arise out of a single transaction involving two allegedly unauthorized charges totaling $49.98; Plaintiff alleges Experian withdrew payments after his paid membership had been cancelled, and Fidelity failed to investigate or return his money. Plaintiff's state law claims are thus so closely related to his EFTA claims that they would be expected to be tried in one judicial proceeding. Therefore, this Court has supplemental jurisdiction over each of Plaintiff's state law claims. *See Hunter v. Page Cnty., Iowa*, 102 F.4th 853, 869 (8th Cir. 2024) ("The appearance of a federal . . . claim on the face of plaintiffs' complaint created a federal question, provided a basis for removal, and consequently provided a basis for supplemental jurisdiction over plaintiffs' related state claims. Plaintiff was the master of his complaint. If he did not want to risk removal of their case to federal court, he should not have pleaded a federal claim.").

Because the face of Plaintiff's Complaint contains a claim arising under federal law, removal of the case was proper. See 28 U.S.C. 1441(c). And because Plaintiff's state law claims are not novel or complex and are part of the same "case or controversy" as his federal EFTA claims, the Court finds no basis to decline the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c). Accordingly, the undersigned magistrate judge recommends that Plaintiff's motion to remand be denied.

## II. Motion To Compel Arbitration

Fidelity has moved for an order compelling arbitration of Plaintiff's claims against it, asserting that Plaintiff agreed to be bound by the Fidelity Account Customer Agreement ("Customer Agreement") containing an arbitration clause when he submitted a signed application for an Individual Cash Management Account with Fidelity. (Filing No. 8 at p. 2). Fidelity provided a copy of the Customer Agreement and Plaintiff's application dated August 26, 2024. (Filing No. 9-2; Filing No. 9-3). Plaintiff does not dispute the existence of the Customer Agreement, but does dispute the validity and enforceability of the arbitration clause contained therein. (Filing No. 34).

The express terms of Plaintiff's application for his Individual Cash Management Account provides, "By selecting Open account below, you are electronically signing this application and acknowledging that you: Received, understand, and agree to the Account Opening Agreements [including the Customer Agreement] . . . Understand that this account is governed by a pre-dispute

arbitration clause contained on the last page of the Customer Agreement." (Filing No. 9-2 at p. 3). Thus, by submitting the application, Plaintiff agreed to the terms of the Customer Agreement with Fidelity and understood that the account would be governed by an arbitration clause. (*Id.*). The first page of the Customer Agreement advises the customer of "Things to Know Before Using Your Account," including that "Disputes between you and Fidelity are settled by arbitration." The text of that advisement is in larger, bold font. (Filing No. 9-3 at p. 1). The arbitration provision states, in relevant part:

> All controversies that may arise between you [Plaintiff] and us [Fidelity] concerning any subject matter, issue, or circumstance whatsoever (including, but not limited to, controversies concerning any account, order, distribution, rollover, advice interaction, or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between you and us, whether entered into or arising before, on, or after the date this account is opened) shall be determined by arbitration through the Financial Industry Regulatory Authority (FINRA) or any United States securities self-regulatory organization or United States securities exchange of which the person, entity or entities against whom the claim is made is a member, as you may designate.

(Filing No. 9-3 at p. 19). The arbitration provision is on a separate page with "Resolving Disputes—Arbitration" in a larger bold font at the top. The text of the arbitration provision is also in bold font. (*Id.*).

As outlined above, the Customer Agreement signed by Plaintiff contains an arbitration provision that requires "[a]ll controversies that may arise" regarding any account, transaction, or "the continuation, performance, interpretation or breach" of any agreement with Fidelity to be "determined by arbitration." (Filing No. 9-3 at p. 19). Fidelity therefore seeks an order compelling arbitration of the parties' dispute pursuant to the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1 et seq. The FAA provides "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022) (quoting *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008)). The

FAA "leaves no place for the exercise of discretion by a district court," and requires that issues within the scope of a valid, enforceable arbitration agreement be referred to arbitration. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2007).

In reviewing a motion to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). The Court must grant a motion to compel arbitration "if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). Whether a valid arbitration agreement exists is a question of state contract law. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).

***A. Validity of the Arbitration Agreement***

Plaintiff challenges the validity of the arbitration agreement because it is "dense" and "written in fine print." (Filing No. 27 at p. 8). More specifically, he argues that the arbitration clause should be considered unenforceable because it designates the "obscure" and "largely unknown" Financial Industry Regulatory Authority ("FINRA") as the arbitral forum and is "buried" at the bottom of the agreement.

"To determine whether a valid agreement to arbitrate exists," the Court "look[s] to the forum state's contract law[.]" *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (stating that when determining the validity of an arbitration agreement, ". . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). The party seeking enforcement of the contract has the burden of establishing the existence of a valid, legally enforceable agreement, consisting of an offer, acceptance, and some meeting of the minds. *Equestrian Ridge Homeowners Ass'n v. Equestrian Ridge Ests. II Homeowners Ass'n*, 953 N.W.2d 16, 30 (Neb. 2021); *Ballou v. Asset Mktg. Servs., LLC,* 46 F.4th 844, 857 (8th Cir. 2022) (holding "party seeking to compel arbitration bears the burden to prove a valid contract."). Nebraska law provides that arbitration agreements are "valid, enforceable, and irrevocable except upon such grounds as exist in law or equity for . . . revocation." Neb. Rev. Stat. § 25-2602.01(a). Nebraska thus favors the enforcement of arbitration agreements so long as they are not unconscionable and

do not violate public policy. *Jones v. Burr*, 389 N.W.2d 289, 295 (Neb. 1986). In Nebraska, unconscionability is determined "in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Parizek v. Roncalli Catholic High Sch.*, 655 N.W.2d 404, 408 (Neb. Ct. App. 2002).

Here, there is no dispute that Plaintiff voluntarily signed, acknowledged, and accepted the Customer Agreement that included the arbitration clause. Plaintiff does not even "allege that the clause is unconscionable per se," only that "any attempt by him to follow the clause was futile." (Filing No. 27 at p. 8). Subjective difficulty understanding a contract that was voluntarily signed, however, does not support a finding of unconscionability. *See Kramer v. Eagle Eye Home Inspections, Inc.*, 716 N.W.2d 749, 763 (Neb. Ct. App. 2006) ("As a general rule, every person of mature age able to read and write, who has an opportunity to read an instrument, and executes the same is presumed to know the contents of the instrument signed and is estopped form denying the contents thereof."). Further, the record does not support Plaintiff's assertions that the arbitration clause was written in "fine print" and "buried" within the Customer Agreement—the agreement references the clause in multiple places throughout, references to the requirement to arbitrate is in bold and larger font, and the clause itself is also in bolded font. Failure by a party to carefully read and search a contract despite being fully capable to do so does not render the contract unenforceable. *See id.* The undersigned magistrate judge thus finds that the arbitration agreement is valid.

### ***B. Scope of the Arbitration Agreement***

Having found the arbitration agreement is valid, the Court must next determine whether its scope encompasses the dispute between the parties. A court must "liberally construe" a valid arbitration agreement. *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.")).

Here, the arbitration clause broadly encompasses "[a]ll controversies that may arise between you [Plaintiff] and us [Fidelity] concerning any subject matter, issue or circumstance whatsoever." (Filing No. 9-3 at p. 19). Plaintiff claims after he notified Fidelity of the allegedly unauthorized charges to his account, Fidelity failed to investigate or recredit his account, thus violating the EFTA. Plaintiff's claim against Fidelity therefore falls squarely within the scope of the arbitration clause.

***C. Waiver***

Finally, Plaintiff argues that Fidelity waived its right to arbitrate by engaging in litigation. (Filing No. 27 at pp. 2-4). Relying heavily on *Morgan v. Sundance*, 596 U.S. 411 (2022), Plaintiff contends that Fidelity waived its right to arbitrate because the state court was an available forum to enforce the arbitration agreement, and Fidelity's Consent to Removal "evinced an intention to litigate" that is "inconsistent" with the right to arbitrate. (Filing No. 27 at p. 2).

"Arbitration is a waivable contractual right." *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 (8th Cir. 2021). To establish that a party has waived its right to arbitrate, the opposing party must demonstrate that the moving party both knew of an existing right to arbitrate and acted inconsistently with that right. *See Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) ("A party waives its right to arbitration if it '(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts.'") (quoting *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007)); *Morgan*, 596 U.S. at 419 (disposing of the prejudice requirement). A party acts inconsistently with its right to arbitrate when it "substantially invoke[s] the litigation machinery" by actively defending or pursuing the lawsuit on the merits rather than making an early determination to proceed via arbitration. *Sitzer*, 12 F.4th at 855; *Lewallen*, 487 F.3d at 1090-1091.

A consent to removal alone does not "substantially invoke the litigation machinery." *Compare Donelson v. Ameriprise Fin. Servs.*, 999 F.3d 1080, 1087-1088 (finding no waiver where a party filed a motion to strike class-action allegations at the same time it moved to compel arbitration), *with Sitzer*, 12 F.4th at 857 (finding waiver where a party attempted to compel arbitration after it filed dispositive motions, participated in hearings, and engaged in discovery for 305 days), *and Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 994, 997 (8th Cir. 2025) (finding waiver were a party filed dispositive motions, participated in discovery, and sought a nine-

month extension before seeking to compel arbitration two years into litigation). Fidelity's only actions in this suit so far have been to consent to removal, and four days later to file the instant Motion to Compel Arbitration. Fidelity has done nothing inconsistent with its right to arbitrate pursuant to the valid arbitration agreement it has with Plaintiff. Therefore, the undersigned magistrate judge finds Fidelity did not waive its right to arbitrate.

In sum, Plaintiff has not shown that removal was improper or that remand is appropriate. Fidelity has established that the parties agreed to resolve the Plaintiff's claims through arbitration, and Fidelity did not waive that right. Upon consideration,

**IT IS HEREBY RECOMMENDED** to the Honorable Robert F. Rossiter, Jr., Chief United States District Court Judge, that:

1. Plaintiff's Amended Motion to Remand (Filing No. 16) be denied;
2. Defendant Fidelity's Motion to Compel Arbitration (Filing No. 7) be granted; and
    a. The parties should proceed to arbitration in accordance with the terms of their agreement;
    b. The case be stayed pending arbitration; and
    c. Every ninety (90) days from the date of an order adopting this Findings and Recommendation, Defendant's counsel be required to file a report on the docket explaining the status of the arbitration.

Dated this 15th day of July, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

A party may object to a magistrate judge's findings and recommendation by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. NECivR 72.2. Failure to timely object may constitute a waiver of any objection.